IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RUSSELL CLEVENGER, individually and as
Personal Representative and Administrator of
the Estate of CAROLYN CLEVENGER, and as
Guardian and Next Friend of Minor Children
ASHLEY CLEVENGER and ANDREW CLEVENGER,

    Plaintiffs,

v.

EASTMAN CHEMICAL COMPANY,

    Defendant.                             Case No. 07-cv-148-DRH

### MEMORANDUM and ORDER

**HERNDON, District Judge:**

      This matter is before the Court on a motion for remand to state court for lack of federal subject matter jurisdiction (Doc. 10). For the following reasons, the motion is **GRANTED**.

### I. Introduction

      In 2002, Plaintiff Russell Clevenger, an employee of Defendant Eastman Chemical Company ("Eastman") residing at that time near Chicago, Illinois, accepted from his employer an overseas assignment to Shanghai, China. As a condition of accepting the assignment, Mr. Clevenger sought assurances from Eastman that he and his family would have access to high-quality medical care in China, and received assurances from his employer that such care was available to Eastman personnel stationed in Shanghai through a clinic called Worldlink. In January 2005,

twelve days after the Clevenger family returned from a vacation in Tanzania, Mr. Clevenger's wife, Carolyn Clevenger, began to display signs of illness. Worldlink medical personnel diagnosed Mrs. Clevenger as suffering from dengue fever and began a course of treatment for that illness. Despite treatment for dengue fever, Mrs. Clevenger's condition continued to decline to the point that Mr. Clevenger arranged for his wife, who by then was suffering from high fever and seizures, to be airlifted to a hospital in Hong Kong. At the Hong Kong hospital Mrs. Clevenger was diagnosed as suffering from malaria. Mrs. Clevenger died of malaria three days after her arrival at the Hong Kong hospital. After his wife's death, Mr. Clevenger was transferred by Eastman to an assignment at the company's headquarters in Kingsport, Tennessee, where he relocated with his two minor children, Plaintiffs Ashley Clevenger and Andrew Clevenger.

In 2007 Mr. Clevenger filed this action in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, under the Illinois Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2. The gravamen of Mr. Clevenger's claim for relief is that Eastman misrepresented to him, either negligently or deliberately, the quality of medical care available to Eastman personnel stationed in China, and failed to ensure that adequate medical care was available to himself and his family in China, with the proximate result that Carolyn Clevenger died due to improper medical treatment. Eastman removed the case to this Court pursuant to 28 U.S.C. § 1441, asserting the existence of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332. Mr. Clevenger has moved for remand of the

case to state court for lack of subject matter jurisdiction, and the motion has been fully briefed and is ripe for decision. Although Eastman has requested oral argument on the motion, the Court concludes that oral argument will not be helpful in deciding the motion. Accordingly, the Court now rules as follows.

## II. Discussion

### A. Legal Standard

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking removal has the burden of establishing federal jurisdiction. *See Ford v. Keck*, No. 06-cv-667-DRH, 2007 WL 1022003, at *1 (S.D. Ill. Apr. 2, 2007); *Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 835 (S.D. Ill. 2006). "'Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.' Put another way, there is a strong presumption in favor of remand." *Hill v. Olin Corp.*, No. 07-CV-0054-DRH, 2007 WL 1431865, at *1 (S.D. Ill. May 14, 2007) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). All doubts about the propriety of removal are to be resolved in favor of remand. *See Morthland v. BRP US, Inc.*, No. 06-CV-01038-DRH, 2007 WL 853986, at *1 (S.D. Ill. Mar. 16, 2007); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000).

### B. Federal Question Jurisdiction

The Court turns first to the matter of whether this case lies within so-called "federal question" jurisdiction. In general, of course, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The usual test of whether an action arises under federal law for purposes of Section 1331 is the "well-pleaded complaint" rule, which provides generally that a case arises under federal law within the meaning of the statute only when federal law appears on the face of a plaintiff's complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 402 (7th Cir. 2001); *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007). In other words, "a claim 'arises under' the law that creates the cause of action." *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007) (citing *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257 (1916)). In a limited class of cases, however, an action may arise under federal law within the meaning of Section 1331 even if the complaint in the case asserts no claim for relief under federal law where state law is "completely preempted" by federal law. Complete preemption occurs when "the preemptive force of a . . . federal . . . statute is so . . . extraordinary . . . that it . . . converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Kuntz v. Illinois Cent. R.R. Co.*, 469 F. Supp. 2d 586, 590 (S.D. Ill. 2007) (quoting *Nelson v. Stewart*, 422 F.3d 463, 466-67 (7th Cir. 2005)). "Once an area of state law has been completely pre-empted, any claim

purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. In such situations, the federal statute . . . not only preempt[s] state law but also authorize[s] removal of actions that sought relief only under state law." *Id.* (citation omitted).[1]

One of the narrow class of federal statutes that completely preempts state law so as to permit removal of state-law claims to federal court in federal question jurisdiction is, of course, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, specifically, ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-66 (1987); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486-87 (7th Cir. 1996); *City of Rockford v. Raymond*, No. 98 C 50353, 1999 WL 218549, at *1 (N.D. Ill. Apr. 14, 1999). That provision of ERISA states that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In this Circuit, courts examine three factors to determine whether a state-law claim is within the scope of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for purposes of complete preemption, specifically: "(1) whether the 'plaintiff [is] eligible to bring

---

1. Complete preemption is to be distinguished, of course, from so-called "conflict preemption." "[F]ederal preemption that merely serves as a defense to a state law action (sometimes called 'conflict preemption') does not confer federal question jurisdiction. Thus the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading." *Kuntz*, 469 F. Supp. 2d at 594. "Conflict preemption is . . . nothing more than an affirmative defense that does not trump the well-pleaded complaint rule." *Id*.

a claim under that section;' (2) whether the plaintiff's 'cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a);' and (3) whether the plaintiff's 'state law claim cannot be resolved without an interpretation of a contract governed by federal law.'" *Moran v. Rush Prudential HMO, Inc.*, No. 98 C 0442, 1998 WL 325204, at \*2 (N.D. Ill. June 9, 1998) (quoting *Jass*, 88 F.3d at 1487).  *See also Speciale v. Seybold*, 147 F.3d 612, 615 (7th Cir. 1998).

In this case, the claims before the Court relate essentially to the quality of the medical care that Carolyn Clevenger received in China and exist independently of, and can be resolved separately from, the terms of any ERISA plan.  Such claims generally are deemed not to be completely preempted by ERISA.  For example, in *Jass v. Prudential Health Care Plan, Inc.*, the United States Court of Appeals for the Seventh Circuit concluded that the crucial question in testing complete preemption under ERISA is whether a case can be resolved without interpreting a contract for benefits.  *See* 88 F.3d at 1489 (holding that a claim that a health maintenance organization ("HMO") improperly denied physical therapy was preempted, since the claim "cannot be resolved without interpreting the benefits contract because that contract provided the benefits to which Jass was entitled").  Correspondingly, the court held that the claims for medical malpractice and vicarious liability were not preempted, as those claims were not dependent upon interpretation of a plan document.  *See id*. at 1488.  Similarly, in *Rice v. Panchal*, 65 F.3d 637 (7th Cir. 1995), the plaintiff filed an action against his insurer, an ERISA health care benefits plan, claiming the plan was liable for the medical malpractice of one of the plan's

providers under the state law of respondeat superior. *See id.* at 638-39. The Seventh Circuit Court of Appeals held that the case could not be removed to federal court based on complete preemption under ERISA, because the plaintiff's claim could be resolved without the interpretation of an ERISA plan and therefore was not in the nature of a claim for benefits under the statute. "In this case, Rice's claim that [the insurer] is liable for the alleged medical malpractice of [the provider] does not rest upon the terms of an ERISA plan, and it can be resolved without interpreting an ERISA plan. Therefore, his claim is not properly recharacterized as a suit to enforce his rights under the terms of a plan that is within the scope of § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a), and the claim is not 'completely preempted' under § 502(a)." 65 F.3d at 646.

As the Seventh Circuit Court of Appeals has explained, ERISA "does not oblige federal courts to take over the entire subject of medical care" *Central States, S.E. & S.W. Areas Health & Welfare Fund v. Pathology Labs. of Ark., P.A.*, 71 F.3d 1251, 1254 (7th Cir. 1995). *See also Moreno v. Health Partners Health Plan*, 4 F. Supp. 2d 888, 893 (D. Ariz. 1998) ("Congress has expressed no desire that ERISA be used to degrade the quality of healthcare"). Similarly, as a court in a sister circuit has noted, claims that "merely attack the *quality* of the benefits [plaintiffs] received" are not tantamount to claims that "plans erroneously withheld benefits due" so as to be completely preempted under ERISA. *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 356 (3d Cir. 1995) (holding that claims based on allegedly negligent medical treatment were not completely preempted under ERISA) (emphasis in original). To

hold otherwise would be to effectively federalize the area of medical malpractice law. *See id.* at 357 (noting that "[q]uality control of benefits, such as . . . health care benefits . . . , is a field traditionally occupied by state regulation" and that nothing in the text or the legislative history of ERISA suggests an intent to completely occupy the field). *See also Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 272-73 (2d Cir. 1994) (claims for professional malpractice, breach of fiduciary duty, and intentional infliction of emotional distress against the employer of a psychotherapist that had contracted with the plaintiff's employer to provide services in connection with an employee health benefit plan governed by ERISA did not state a claim arising under ERISA for purposes of federal question jurisdiction); *Herrera v. Lovelace Health Sys., Inc.*, 35 F. Supp. 2d 1327, 1331-32 (D.N.M. 1999) (state-law claims against an HMO and a physician who performed a vasectomy for medical malpractice, corporate negligence, negligence per se, and intentional infliction of emotional distress were not completely preempted under ERISA, as they were not claims to recover benefits due or to enforce rights under the terms of a plan and had nothing to do with plan administration and the approval or withholding of benefits); *Lancaster v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 958 F. Supp. 1137, 1145-46 (E.D. Va. 1997) (claims attacking the quality of treatment fell outside the scope of ERISA's provision authorizing an action by a participant to enforce or clarify rights under the terms of a health plan).

The Court is satisfied that the claims in this case are not properly characterized as claims for benefits under ERISA. *See Pacificare of Okla., Inc. v.*

*Burrage*, 59 F.3d 151, 154-55 (10th Cir. 1995) (a medical malpractice claim is not preempted by ERISA when the issue of a doctor's negligence requires the assessment of providing admittedly covered treatment or giving professional advice); *Corporate Health Ins., Inc. v. Texas Dep't of Ins.*, 12 F. Supp. 2d 597, 620 (S.D. Tex. 1998) ("Claims challenging the quality of a benefit . . . are not preempted by ERISA."); *Edelen v. Osterman*, 943 F. Supp. 75, 76 (D.D.C. 1996) ("[R]un-of-the-mill state-law claims such as . . . torts committed by an ERISA plan . . . are not subject to ERISA preemption."); *Smith v. HMO Great Lakes*, 852 F. Supp. 669, 672 (N.D. Ill. 1994) (an action asserting vicarious liability for medical malpractice based solely on substandard treatment is not an alternative action to collect benefits). Therefore, this case is not properly removable based upon complete preemption under ERISA.

### C.    Diversity Jurisdiction

Having determined that this case does not arise under federal law within the meaning of 28 U.S.C. § 1331, the Court turns to the question of whether federal subject matter jurisdiction is proper in federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. As a general rule, of course, a federal court may exercise jurisdiction in diversity only if all of the parties to an action are of completely diverse citizenship, that is, no plaintiff is a citizen of the same state as any defendant, and an amount in excess of $75,000, exclusive of interest and costs, is in controversy. *See* 28 U.S.C. § 1332(a); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)); *F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 284 (7th Cir. 1989); *Johns v. Johns*

*Mitchell*, No. 06-924-GPM, 2007 WL 496391, at *2 (S.D. Ill. Feb. 13, 2007); *Cassens v. Cassens*, 430 F. Supp. 2d 830, 833 (S.D. Ill. 2006). At issue here is whether the requirement of complete diversity of citizenship is satisfied. The Court concludes that the requirement of complete diversity of citizenship is not met in this instance.

The law in this Circuit formerly was that the relevant citizenship for diversity purposes in an action under the Illinois Wrongful Death Act, under which, as noted, this action is brought, was that of a decedent's wrongful death beneficiaries. *See Wilsey v. Eddingfield*, 780 F.2d 614, 617 (7th Cir. 1985); *Betar v. De Havilland Aircraft of Canada, Ltd.*, 603 F.2d 30, 35 (7th Cir. 1979).[2] In this instance, of course, that would be Tennessee, where, as noted, Mr. Clevenger has been domiciled with his minor children since before the commencement of this suit. *See Appelt v. Whitty*, 286 F.2d 135, 137 (7th Cir. 1961) (the citizenship of an unemancipated minor for diversity purposes is ordinarily that of his or her parents); *Rosado-Marrero v. Hospital San Pablo, Inc.*, 927 F. Supp. 576, 577 (D.P.R. 1996) (same). As amended in 1988, however, the general federal diversity statute, 28 U.S.C. § 1332, now provides, in pertinent part, that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent[.]" 28 U.S.C. § 1332(c)(2). The Illinois Wrongful Death Act provides a cause of action for the benefit of a deceased person's surviving spouse and next of

---

2. In the absence of a showing by the parties to the contrary, the Court assumes at this juncture that the substantive law governing this case is that of Illinois. *See Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 701 n.4 (S.D. Ill. 2007) (noting the presumption in favor of the application of forum law, where the parties to an action do not dispute the application of such law).

kin to compensate them for their losses.  *See* 740 ILCS 180/1.  The statute provides also that such an action must be brought by a decedent's representative:

> Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person.

740 ILCS 180/2.  Although the statute does not mandate the opening of an estate as a prerequisite to bringing suit, it is generally recognized that proper plaintiff in an action under the Illinois Wrongful Death Act is the duly-appointed administrator of a decedent's estate.  *See Wilson v. Sundstrand Corp.*, No. 99 D 6944, 99 C 6946, 2002 WL 99745, at **3-4 (N.D. Ill. Jan. 25, 2002) (noting that although the Illinois Wrongful Death Act does not require that the personal representative of a decedent be the court-appointed administrator of the decedent's estate, plaintiffs are "wise" to procure such an appointment in state court before pursuing a wrongful death action in federal court); *Daniels v. USS Agri-Chemicals*, No. 87 C 1836, 1990 WL 133230, at *2 (N.D. Ill. Sept. 11, 1990) (noting that, although the Illinois Wrongful Death Act does not mandate the opening of an estate, the language of the statute regarding a "personal representative" is similar to and should be read in pari materia with that of the Illinois Probate Act).  In light of the language of Section 1332(c)(2), to ascertain the existence of diversity jurisdiction in this case, the Court must look to the citizenship of Carolyn Clevenger to determine whether diversity jurisdiction is proper

in this instance. *See Yarber v. Mehta*, No. 06-cv-1018-JPG, 2007 WL 1169699, at *2 (S.D. Ill. Apr. 18, 2007) (in an action under the Illinois Wrongful Death Act, holding that the parties were completely diverse where the plaintiff's decedent was a citizen of Missouri, and the defendants were citizens of Illinois).

The problem here is that for diversity purposes Carolyn Clevenger was not a domiciliary of any of the United States at the time of her death. In general, for purposes of federal diversity jurisdiction, a party must be both a citizen of the United States and a citizen of one of the states of the United States. "28 U.S.C. § 1332(a)(1) creates the federal courts' jurisdiction over actions between 'citizens of different States.' For a natural person to fall within the provision he must be both (1) a citizen of the United States and (2) a citizen of a particular state." *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980). *See also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State.") (emphasis in original); 13B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice & Procedure* § 3621 (3d ed. 1998 & Supp. 2007) ("Actions involving Americans over which the federal courts have diversity of citizenship jurisdiction are described in Section 1332 of Title 28 of the United States Code as being between citizens of different states or between citizens of states and citizens or subjects of foreign states. Consequently, it is not sufficient for diversity purposes that a party be a citizen of the United States; a party also must be a citizen of one of the states of the United States,

as that term is defined in Section 1332(d) of Title 28.") (footnote omitted) (collecting cases).

As a consequence of this principle, federal courts generally may not entertain suits in diversity involving American citizens domiciled abroad. *See, e.g., Sadat*, 615 F.2d at 1178-82 (affirming a district court's dismissal of an action brought by a naturalized citizen of the United States domiciled in Egypt for lack of diversity jurisdiction, as the plaintiff was not a "citizen of a state" as required by 28 U.S.C. § 1332); *ISI Internacional, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (a federal court could not exercise jurisdiction in diversity over a suit in which a partner in one of the defendant law firms was an American citizen domiciled in Canada); *Alla v. Kornfeld*, 84 F. Supp. 823, 824-25 (N.D. Ill. 1949) (a suit based on diversity jurisdiction could not be maintained against an American citizen who had lived in Mexico for thirteen years and had registered with the Department of State as a citizen of the United States). Additionally, an American citizen domiciled abroad is not deemed to be a foreign citizen for purposes of the provisions of 28 U.S.C. § 1332 dealing with federal alienage diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(2)-(4). "[A]n American citizen domiciled abroad is not by virtue of that fact alone a citizen of a foreign state." *Sadat*, 615 F.2d at 1183. *See also Kamel v. Hill-Rom Co.*, 108 F.3d 799, 805 (7th Cir. 1997) (an American citizen domiciled in Saudi Arabia was not an alien within the meaning of 28 U.S.C. § 1332(a)(2): "[F]or diversity purposes, an expatriate is deemed neither an alien nor a citizen of any State."). In this case the record establishes that Carolyn Clevenger

was domiciled in China at the time of her death. Accordingly, federal diversity jurisdiction does not exist in this case.

### III. Conclusion

For the foregoing reasons, the motion for remand (Doc. 10) is **GRANTED**. Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction. All other pending motions in this cause are **DENIED as moot**.

**IT IS SO ORDERED.**

Signed this 24th day of August, 2007.

/s/         DavidRHerndon
**United States District Judge**